Nov. Term, 1854.

TABER
v.
HUTSON.

---

### TABER *v.* HUTSON.

In trespass, the introduction of evidence by way of defence, no matter for what purpose it is offered, can not be considered in aggravation of the damages.

The refusal of the Court to give a pertinent and proper instruction to the jury, will not authorize the reversal of the judgment, where the Court has virtually given it in other instructions.

Where a defendant is sued for a tort, which is also a subject of criminal jurisdiction, the rule that gives damages not only to recompense the sufferer, but to punish the offender, is not applicable.

The damages for such a tort are limited to those which are merely compensatory.

In trespass for an assault and battery, the jury are not restricted to a consideration of the plaintiff's mere pecuniary loss, but they may consider every circumstance of the act which injuriously affected the plaintiff, not only in his property, but in his person, peace of mind and individual happiness.

The jury can not, however, in estimating such damages, take into consideration the wealth of the defendant.

The objection that an instruction given to the jury was not reduced to writing, if not made in the Court below, can not be made in the Supreme Court.

APPEAL from the *Cass* Circuit Court.

DAVISON, J.—Trespass by *Hutson* against *Taber*. The declaration contains four counts; the three first for assault and battery and for false imprisonment, and the fourth for an assault and battery. Plea, the general issue. Verdict for the plaintiff of 600 dollars. New trial refused, and judgment for the plaintiff.

Nov. Term. 1854.

TABER
v.
HUTSON.

*Tuesday,*
*November* 28.

During the trial, it was proved that *Taber* committed an assault and battery on *Hutson*, and also charged him before the mayor of *Logansport* with having stolen and concealed in his house 800 dollars, the property of *Taber;* upon which charge *Hutson's* house was searched without finding the money, and he himself was imprisoned in the county jail.

Thereupon *Taber* produced evidence tending to show that on a previous occasion, *Hutson's* house had been searched by an officer of the law, upon a charge of stolen property being therein concealed. To the introduction of this evidence *Hutson* assented, but *Taber*, when it was given, disavowed any purpose to impugn *Hutson's* character; its object being to show that he was under suspicion of dishonesty, and that, on that account, *Taber* was justified in proceeding on less evidence than would be required to charge one who had always stood fair in community. But in connection with this, it was shown that such previous search did not result in finding the property sought; nor was the search directed against *Hutson's* premises on suspicion that he himself was in possession of the lost property; but that it had been stolen by another person, who was, at the time, stopping with him.

The evidence relative to the previous search was commented upon by the plaintiff's counsel, in his argument to the jury, as showing a continuous malice on the part of *Taber* towards *Hutson*, and as adding insult to injury.

In relation to this branch of the case, the defendant moved the Court to instruct the jury, that "the fact of *Taber* having, on this trial, while disavowing any purpose to blacken *Hutson's* character, introduced evidence tending to show that his premises were, upon another occasion, searched by an officer, as extenuating *Taber's* conduct for

Nov. Term, making the search in question, is not to be considered by
1854.     the jury as aggravating the present wrong complained of;
TABER     such course in his defence, taken with *Hutson's* consent,
v.        gives him no title to increased damages."
HUTSON.

This instruction was refused. We think it was pertinent to the case, and involved a proper direction to the jury. The mere introduction of the evidence, no matter what *Taber's* purpose may have been in offering it, could not properly be considered in estimating the damages. Still the refusal, though erroneous, can not be allowed to reverse the judgment; because the Court, in its charge, virtually covered the ground assumed by the refused instruction. The jury were explicitly told, that "if they should find *Taber* guilty, the damages assessed by them must be based alone on the trespass and false imprisonment alleged in *Hutson's* declaration, and the violent matters of aggravation immediately consequent thereon." This charge was delivered without being reduced to writing, and for that reason it is said to be objectionable. We think differently. The law in force when the instruction was given, did not require the Court to reduce its charges to writing, unless requested to do so by a party to the suit. In the present case, no such request appears to have been made; nor was the charge objected to in the Court below because it was given orally; and such objection, being first made in this Court, comes too late. R. S. 1843, c. 40, s. 326.

At the plaintiff's request, the Court instructed, that "in giving exemplary damages, it is proper for the jury to consider the wealth of the defendant, and if they find him to be a wealthy man, they may increase the exemplary damages, because what would tend to repress injury and outrage in a poor man, might have no such effect in a man of wealth; and it is the true policy of the law, in such cases, not only to give compensation for the actual loss, but to give such additional damages as will tend to prevent such conduct, and give peace and security to private rights and the community in general."

Upon the subject of this instruction, the authorities are numerous but not uniform. They are principally cited in

2 Greenleaf's Ev., s. 253, note 2. Also in Sedgwick on Damages, p. 38, *et seq.*

Mr. *Greenleaf* lays down the rule, that "damages should be precisely commensurate with the injury; neither more nor less." But Mr. *Sedgwick* says, that "whenever the elements of fraud, malice, gross negligence or oppression mingle in the controversy, the law, instead of adhering to the system or even the language of compensation, adopts a wholly different rule. It permits the jury to give what it terms punitory, vindictive, or exemplary damages; in other words, it blends together the interest of society and of the aggrieved individual, and gives damages not only to recompense the sufferer, but to punish the offender." These authors support their respective positions with great ability. But it seems to us that the rule laid down by either is not applicable to the case presented by this record.

Where the defendant is sued for the commission of a tort, such as slander, an offence not the subject of criminal punishment, the rule that gives damages "to punish the offender," may, with some degree of propriety, be applied, because it is the only mode in which, by public example, the various rights in community to personal security and private property can, under the sanction of law, be protected from injury and outrage. In such a case, there is wisdom in permitting a jury to "blend together the interest of society and of the aggrieved individual."

But there is a class of offences, the commission of which, in addition to the civil remedy allowed the injured party, subjects the offender to a state prosecution. To this class the case under consideration belongs; and if the principle of the instruction be correct, *Taber* may be twice punished for the same assault and battery. This would not accord with the spirit of our institutions. The constitution declares, that "no person shall be twice put in jeopardy for the same offence;" and though that provision may not relate to the remedies secured by civil proceedings, still it serves to illustrate a fundamental principle inculcated by every well-regulated system of government, viz., that each

violation of the law should be certainly followed by one appropriate punishment and no more.

The state has undertaken to vindicate her own wrongs; and can there be any valid reason why such vindication should be the result of a suit in favor of a private individual? It matters little to the offender what be the form in which he pays the penalty, so that he pays but once; but the rules of pleading and evidence do not permit a judgment like the present to be set up as a bar to a state prosecution. Hence the defendant still remains liable to be tried and convicted for a public offence. Though liable to be punished, a criminal proceeding may not, it is true, be instituted against him; but that contingency does not affect the principle involved, because the penalty which he has incurred belongs to the state, and her failure to sue for it would furnish no reason for its recovery in this action.

We are advised that the view just taken is in conflict with several decisions entitled to grave consideration; but the more recent adjudications on this subject evidently lean against the rule in *Sedgwick*, so far as it allows damages in civil suits by way of punishing the defendant for offences punishable criminally.

*Whitney* v. *Hitchcock*, 4 Denio 461, was trespass for an assault and battery committed under circumstances of great aggravation. The Court below charged the jury, that they had a right to render a verdict for an amount beyond the actual damages proved, and that they were at liberty, if they pleased, to give exemplary damages. This instruction was held erroneous by the Supreme Court. So in *Austin* v. *Wilson*, 4 Cush. 273, which was an action for a libel, the Court say, "if exemplary, vindictive or punitive damages can ever be legally awarded as an example to deter others, or as punishment of the defendant, they can not be recovered in an action for an injury which is also punishable by indictment, as libel and assault and battery. If they could be, the defendant might be punished twice for the same act." See also 9 Law Reporter 529, *et seq.*— 10 Law Reporter 238.

These decisions, in our opinion, involve a correct principle, and we are inclined to follow them. *Taber* was liable to indictment for the assault and battery charged in this action, and damages could not, therefore, be given beyond a compensation for the plaintiff's injury. He was not, it is true, "confined to the proof of actual pecuniary loss; the jury might have taken into consideration every circumstance of the act which injuriously affected the plaintiff, not only in his property, but in his person, his peace of mind, in short, his individual happiness." But we think the jury had no right, as charged by the Circuit Court, "to give such additional damages as would tend to prevent such conduct, and give peace and security to private rights and the community in general." Nor could they, in estimating the damages, regard the wealth of the defendant, because that circumstance was wholly unconnected with the offence, and could not be considered in the way of recompense for the injury.

We are of opinion that the instruction was erroneous, and may have misled the jury. The judgment must be reversed.

STUART, J., having been concerned as counsel, was absent.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*D. D. Pratt*, for the appellant.

*H. P. Biddle, L. Chamberlain* and *B. W. Peters*, for the appellee.